UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JESSE JAMES KASENGE, *formerly known as* JESSE KASENGE, | * | |
| | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-11725-IT |
| | * | |
| KELLY RYAN, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM AND ORDER

August 8, 2016

TALWANI, D.J.

Jesse James Kasenge's ("Kasenge" or "Petitioner") pro se Petition for Writ of Habeas Corpus [#1] pursuant to 28 U.S.C. § 2254 asserts several bases for relief. Specifically, Petitioner alleges that 1) at trial a prosecution witness gave false testimony, and 2) there was legally insufficient evidence to sustain a conviction.[1] For the reasons that follow, Kasenge's Petition for Writ of Habeas Corpus [#1] is DENIED.

I.      Procedural History

On October 5, 2011, after a three-day jury trial, Petitioner was convicted of two counts of cocaine distribution (second offense) and one count of distribution within a school zone. Commonwealth v. Kasenge, 985 N.E.2d 412 (Mass. App. Ct. 2013). Petitioner was sentenced to five years and one day in state prison for cocaine distribution, followed by a consecutive two-year term in a house of correction for the school zone distribution charge.

---

[1] Petitioner's original petition also listed a third ground for relief, but this ground was voluntarily deleted by the petitioner. Resp. Ct. Order 2 [#22] ("Petitioner submits to delete ground (2) 'police detective relied upon erroneous reports.'").

Petitioner appealed his conviction on thirteen separate grounds. The Massachusetts Appeals Court rejected those claims on the merits. Id. Petitioner filed an application for further appellate review, and the Supreme Judicial Court denied that request. Commonwealth v. Kasenge, 989 N.E.2d 899 (Mass. 2013).

II.      Facts as Presented at Trial

On December 8, 2009, Arlington Police Detective Brian Connerney ("Det. Connerney") and Waltham Police Detective Robert Afienko ("Det. Afienko") were working on an assignment with the Suburban Middlesex County Drug Task Force ("Task Force"). Trial Transcript ("TR") at Respt.'s Suppl. App. ("S.A.") 285, 421 [#25]. Det. Afienko, who was the case officer responsible for overseeing the investigation, provided Det. Connerney with a phone number to call and arrange for a purchase of crack cocaine. TR 287-288, 290, 414 [#25]. The call was not answered when Det. Connerney placed the call, but Det. Connerney shortly thereafter received a call from that same number. TR 288 [#25]. Det. Connerney told the individual that he wanted to buy four bags of crack cocaine. TR 288, 290 [#25]. The individual directed Det. Connerney to meet him at Walgreen's Pharmacy in Waltham. TR 288 [#25].

In preparation for the assignment, Det. Afienko provided Det. Connerney with $200 from the police safe, and informed the Task Force that they were going to be meeting a target who drove a 2006 Black Dodge Charger. TR 423, 426 [#25]. Det. Connerney, with Det. Afienko following in a separate, unmarked car, drove to the Walgreen's Pharmacy in Waltham. TR 428 [#25]. At approximately 6:51 p.m., Det. Connerney parked in a space adjacent to the Walgreen's Pharmacy. TR 290 [#25]. There were roughly eight other detectives already stationed throughout the parking lot. TR 291 [#25]. As Det. Afienko entered the parking lot, he saw an individual exit a Dodge Charger and walk across the parking lot. TR 431-32 [#25]. The individual then entered

2

the front passenger's seat of Det. Connerney's car and told Det. Connerney to "just drive." TR 293-94, 438 [#25]. Det. Connerney drove approximately thirty to fifty feet, at which point Petitioner told him to stop. TR 294 [#25]. Det. Connerney then gave the individual two hundred dollars in exchange for four bags of crack cocaine. TR 294 [#25]. After the money and drugs were exchanged, the individual exited the vehicle and left the area. TR 295, 439 [#25]. Det. Connerney and Det. Afienko each left the parking lot and returned to the office. TR 440 [#25].

On December 14, 2009, Det. Afienko, Det. Connerney and the Task Force resumed their investigation. TR 444 [#25]. At approximately 6:30 p.m., Det. Connerney called the same number he had called on December 8. TR 296-97 [#25]. Again, no one answered the phone, but a short time later an individual returned Det. Connerney's phone call. TR 297 [#25]. Det. Connerney asked for four $50 bags of cocaine. TR 298 [#25]. The individual on the phone directed Det. Connerney to the Kentucky Fried Chicken in Waltham. TR 298 [#25]. Det. Connerney drove to Kentucky Fried Chicken in Waltham and parked in the parking lot next to a black Dodge Charger. TR 299-300 [#25]. Other detectives were already scattered throughout the area, including Det. Afienko who was in an adjacent parking lot. TR 300, 448 [#25]. Det. Connerney observed a male and female inside a Dodge Charger. TR 300 [#25]. The male exited the Dodge Charger, and entered the front passenger's seat of Det. Connerney's car. TR 301 [#25]. Det. Connerney then exchanged $100 for two bags of cocaine. TR 301 [#25]. Det. Connerney confirmed that the individual who entered his car on December 14 was the same person who entered his car on December 8. TR 302 [#25].

On February 23, 2010, Det. Afienko secured an arrest warrant for Petitioner. TR 454 [#25]. Thereafter he instructed Det. Connerney to call the same number he had used on the two prior occasions. TR 304, 454 [#25]. Det. Connerney and the person who answered arranged to

meet at a public housing area in Waltham. TR 305 [#25]. Petitioner arrived on foot at the loop at

the end of a dead end road and entered the front passenger's seat of Det. Connerney's car. TR

306 [#25]. Det. Connerney began to drive, but approximately ten seconds later, members of the

Task Force, including Det. Afienko, approached the car, and after a brief struggle placed

Petitioner in handcuffs. TR 307-09 [#25].

At trial Det. Connerney identified Petitioner as the person who entered his car and sold

him the drugs on December 8 and December 14. TR 302 [#25].

III.   Analysis

A.  Exhaustion

Petitioner argues in Count 1 that his Fourteenth Amendment right to due process was

violated when a prosecution witness gave perjured testimony "at the hands of the state" and that

soliciting false evidence that allows a misleading and false impression to go uncorrected violates

due process. Pet'r's Mem. Supp. of Appl. For Writ for Habeas Corpus ("Pet'r's Mem. Supp.") 1-

2 [#41]. The Government argues, however, that Petitioner's claim is not exhausted as required by

the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that the entire case must

therefore be dismissed.

An application for a writ of habeas corpus will not be granted on behalf of a person in

custody pursuant to the judgment of a state court "unless it appears that . . . the applicant has

exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

Exhaustion requires that a petitioner present, or do his best to present, the substance of a federal

habeas claim "fairly and recognizably" to the state's highest tribunal before seeking habeas

relief. Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997); see Clements v. Maloney, 485

F.3d 158, 162 (1st Cir. 2007). Total exhaustion is required, and petitions may not proceed with

both exhausted and unexhausted claims. See 28 U.S.C. § 2254(b)(1)(A); Rhines v. Weber, 544 U.S. 269, 274 (2005) (stating that "total exhaustion" was still required after enactment of AEDPA).

Petitioner does not dispute that exhaustion is required. He contends, however, that he met his exhaustion requirement by submitting Count I to the Supreme Judicial Court ("SJC") in his application for further appellate review ("ALOFAR"). Pet'r's Mem. Supp. Opp'n Respt.'s Mot. Dismiss 1 [#32] ("ALOFAR brief referred to due process (S.A. 00173) violation and provided a citation to state court decision that was explicitly and prominently relied on U.S. SUPREME COURT case (in Re. Winshrip; Jackson v. virginia [sic.]) that would have alerted the state court to the alleged federal nature of the claim.").

Raising a claim for the first time on discretionary review is insufficient for exhaustion purposes. See Castille v. Peoples, 489 U.S. 346, 351 (1989) ("The Court of Appeals below held, and respondent contends here, that the submission of a new claim to a State's highest court on discretionary review constitutes a fair presentation. We disagree."); Melton v. Russo, 322 F. App'x. 3 (1st Cir. 2009) (unpublished) ("A claim that appears for the first time on discretionary review before a state's highest court does not satisfy the exhaustion requirement of § 2254(b)"); Collins v. Roden, No. 08-400217, 2010 WL 1172433, at * 3 (D. Mass. Feb. 22, 2010) ("Only if the federal issue was presented in the courts below the SJC can petitioner's claim be considered exhausted."). In Massachusetts, review of an ALOFAR petition is discretionary, and thus raising a claim for the first time in an ALOFAR is insufficient for exhaustion. See Mass. R. App. P. 27.1 (Rule for Further Appellate Review states that "[s]uch application shall be founded upon substantial reasons affecting the public interest or the interests of justice."); Castille, 489 U.S. at 351 (raising a claim for the first time "in a procedural context in which its merits will not be

considered unless 'there are special and important reasons therefore,'" does not constitute fair presentment). Since Petitioner did not raise the issues in Count I in his appeal before the Massachusetts Appeals Court, this claim is not exhausted. Accordingly, the case must be dismissed.

        B.  Merits

Even if the denial of the ALOFAR could be considered sufficient exhaustion, Petitioner is not entitled to habeas relief on the merits. "[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)). Here, Petitioner has not made this showing.

        Ground I: Prosecution witness gave false testimony as it pertained to the Massachusetts RMV records.

The SJC offered no explanation for its denial of Petitioner's ALOFAR petition, and therefore, if exhausted, it is still petitioner's burden to show that there was no reasonable basis under federal law for the state court to deny relief. Harrington v. Richter, 562 U.S. 86, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.")

The Supreme Court has held that prosecutors are prohibited from knowingly presenting false evidence, including false testimony, to the jury. Napue v. Illinois, 360 U.S. 264, 269-70 (1959). The prohibition applies even if the government merely fails to correct false testimony.

<u>United States v. Vega</u>, 813 F.3d 386, 391 (1st Cir. 2016); <u>Bucci v. United States</u>, 662 F.3d 18,

39-40 (1st Cir. 2011) ("A conviction can be reversed on subornation of perjury grounds only if

the petitioner can show: (1) that the prosecution elicited false testimony; (2) that the prosecution

knew or reasonably should have known that the testimony was false; and (3) that there is a

'reasonable likelihood that the false testimony could have affected the judgment of the jury.'").

Petitioner argues that Det. Afienko's trial testimony implied that he, or members of the

Task Force surveillance team, saw the registration number for the Charger that was seen on

December 8 and 14. Petitioner argues that neither Det. Afienko, nor members of the surveillance

team, saw the registration number for the car Petitioner was driving.

At trial, Det. Afienko was asked on direct exam whether he had seen the registration of

the car Petitioner was driving on December 8.

Q: Were you able to ascertain the registration of the Charger?

A: I was not able to, but members of the surveillance team were.

Q: Were you able to observe the Charger?

A: Yes.

Q: Were you able to estimate the year for the Charger?

A: Yes.

Q: And what was that?

A: A newer, 2000 and above.

TR. 432-33 [#25]. Contrary to Petitioner's contention, Det. Afienko did not falsely imply that he

had seen the car registration. Significantly, he specifically stated that he could not see the car

registration.

As to the other members of the surveillance team, Det. Afienko not only implied that

other members of the surveillance team saw the car registration, he directly testified to that fact. No objection to this testimony was made during trial, and Petitioner fails to provide a basis for suggesting this statement to be false.

Petitioner also argues that Det. Afienko did not have the Registry of Motor Vehicle ("RMV") records for Petitioner's car until after Petitioner was arrested. Pet'r's Mem. Supp. 2-4 [#41]. At trial, after Det. Afienko described the car he had seen on December 8, RMV records for Petitioner's car registration were entered into evidence as certified business records. TR 477-79 [#25]. Det. Afienko was asked to read from the RMV records.

> Q: Now I'm showing you what's been entered into evidence as Commonwealth's Exhibit 8. Is there a registration number on that document?
>
> A: Yes, there is.
>
> Q: And what is that registration number?
>
> A: Mass. Registration 493BJ7
>
> Q: How does that compare with the registration number on Exhibit 7?
>
> A: It's exactly the same.
>
> Q: And does it say who the plate was registered to?
>
> A: This says that this particular plate is registered to a Jesse Kasenge, 2006 Dodge Charger.

TR 507 [#25]. Petitioner claims that it was misleading for Det. Afienko to read from the RMV records because it suggested that Det. Afienko had prior knowledge of the RMV records. Despite Petitioner's assertion, however, Det. Afienko merely read from the certified business records that had been entered into evidence. Petitioner has failed to show that this was misleading.

It is, therefore, not an unreasonable application of Supreme Court precedent to reject this claim.

8

For the foregoing reasons, if the court were to reach the merits, Petitioner's claim under Count I would be denied.

Ground II: There was insufficient evidence on which to base a conviction.

In Ground II Petitioner argues that there was legally insufficient evidence upon which to base a conviction. Pet'r's Mem. Supp. 5 [#41]. Specifically, Petitioner argues that there was a lack of physical and forensic evidence connecting him to the alleged crimes, and he also argues that there was no eyewitness identifying him. Id. at 6.

Unlike Ground I, Petitioner did exhaust this argument, pressing it before both the Massachusetts Appeals Court and the SJC. The SJC summarily denied further appellate review, thus, this court looks to the last reasoned state court decision to determine whether it was contrary to or involved an unreasonable application of clearly established Federal law. Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision- in this case, the [Massachusetts Appeals Court's] rescript.").

The Massachusetts Appeals Court correctly identified the governing Supreme Court precedent, and reasonably applied that precedent to Petitioner's case. Clearly established Supreme Court precedent holds that a reviewing court may set aside a jury's verdict on the ground of insufficiency of evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); Cavazos v. Smith, 132 S. Ct. 2, 6 (2011) (per curiam) ("Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (emphasis original). Here, the Massachusetts Appeals Court stated that it

was reviewing the evidence in the light most favorable to the prosecution to determine whether

"any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." <u>Kasenge</u>, 985 N.E.2d at 412. It also found that there was sufficient evidence

to convict Petitioner, noting,

> The investigating officers called the same telephone number to set up each of the
> three transactions with 'Jay.' At trial, Det. Connerney, who testified that during
> each of the three meetings he sat just one and one-half feet away from the
> defendant, identified the defendant as the person from who he purchased cocaine.
> During the two controlled buys, officers observed the black 2006 Dodge Charger,
> which certified documents from the Registry of Motor Vehicles showed was
> registered in the defendant's name.
>
> Based on this evidence, a rational jury could have found that the defendant was in
> fact the person who sold cocaine to the undercover officer on December 8 and
> December 14, 2009. That some of the officer's testimony may have been slightly
> inconsistent is not pertinent, because '[a]ll the questions of the weight of the
> evidence and the credibility of the testimony were for the jury to decide.'
> <u>Commonwealth v. Asmeron</u>, 70 Mass. App. Ct. 667, 674 (2007). Accordingly the
> judge correctly denied the defendant's motion for a required finding of not guilty.

<u>Id.</u> Contrary to Petitioner's contention, the Massachusetts Appeals Court correctly identified the

Supreme Court principle, and its application of that principle to Petitioner's case was

reasonable.[2] Det. Connerney stated that Petitioner was the person who got into his car on three

separate occasions, and who sold him drugs on two of those occasions. Det. Afienko similarly

identified the Petitioner on each of those three occasions. While Petitioner argues that the

Commonwealth's evidence was weak, and that the identification of him was inadequate, the

jury's verdict was not unreasonable given the facts presented at trial, and the SJC was not

unreasonable in affirming the conviction. Based on the evidence presented at trial there was

sufficient evidence upon which a jury could find Petitioner was the person who sold drugs to

---

[2] "A state court, however, does not need to cite Supreme Court precedents so long as 'neither the
reasoning nor the result of the state-court decision contradicts [those precedents.]" <u>Petrillo v.
O'Neill</u>, 428 F.3d 41, 45 (1st Cir. 2005) (alteration original).

Det. Connerney. Thus, Petitioner's claim under Count II is denied.

     III.     Conclusion

     Containing both exhausted and unexhausted claims, the <u>Petition for Writ for Habeas Corpus</u> [#1] is DENIED. Furthermore, the court also finds that the claims, even if they had been adequately exhausted, are nonetheless without merit.

     IT IS SO ORDERED.


August 8, 2016                                   /s/ Indira Talwani          
                                                         United States District Judge